JS 44 (Rev. 06/17) **CIVIL COVER SHEET** *19-cv-1986*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
M.M. by and through Peter & Tracy M.

**DEFENDANTS**
Rose Tree Media Area School District

**(b)** County of Residence of First Listed Plaintiff   Delaware
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lorrie McKinley, Esquire: McKinley & Ryan, LLC, 238 West Miner Street, West Chester, PA 19382; Tel-610-436-6060; Fax 610-436-6804

Attorneys *(If Known)*
Katherine Meehan, Esq., Tracey Waldmann, Esq., Gabrielle Goham, Esq., Raffaele & Puppio, 19 West Third Street, Media, PA 19063

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
20 U.S.C. Sec. 1400 et seq., 29 USC subsection 794 et seq. and 42 USC subsection 1983
Brief description of cause:
Complaint seeking declaratory and injunctive relief pertaining to special education rights and remedies

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____   DOCKET NUMBER   MAY 3 2019

DATE   May 2, 2019
SIGNATURE OF ATTORNEY OF RECORD   *Lorrie McKinley*

**FOR OFFICE USE ONLY**
RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19    1986

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: __1295 N. Providence Road, Apt F110L, Media, PA 19063__

Address of Defendant: __308 N. Olive Street, Media, PA  19063__

Place of Accident, Incident or Transaction: __Delaware County, PA__

---

**RELATED CASE, IF ANY:**

Case Number _____ Judge· _____ Date Terminated. _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?      Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?      Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?      Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?      Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE __May 7, 2019__    __Lorrie McKinley__    __41211__
                        *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.**  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify)* _____

**B.**  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)* _____
☐ 7. Products Liability
☐ 8. Products Liability  Asbestos
☐ 9. All other Diversity Cases
       *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, __Lorrie Mckinley__ , counsel of record *or* pro se plaintiff, do hereby certify

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE __05/02/2019__    __Lorrie McKinley__    __41211__
                        *Attorney-at-Law / Pro Se Plaintiff*        *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ 609 (5/2018)

MAY - 3 2019

**GAM**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

19      1986

**CASE MANAGEMENT TRACK DESIGNATION FORM**

m.m. by and through Peter & Tracy m. :          CIVIL ACTION

v.          :

Rose Tree media School District          :          NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus — Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security — Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration — Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos — Cases involving claims for personal injury or property damage from exposure to asbestos.          ( )

(e) Special Management — Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)

(f) Standard Management — Cases that do not fall into any one of the other tracks.          (X)

| 5/2/19 | Lorrie McKinley | m.m., and Peter. m. and Tracy m. |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 610-436-6060 | 610-436-6804 | lmckinley@mckinleyryan.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

MAY -3 2019

GAM

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

M.M., by and through his Parents,
**PETER M. AND TRACY M.,**
and **PETER AND TRACY M.**                        :

         Plaintiffs                        :        CIVIL ACTION

   v.                                                          :        NO. 19-


**ROSE TREE MEDIA SCHOOL DISTRICT**        :

        Defendant                        :

## COMPLAINT

### I.    PRELIMINARY STATEMENT

M.M., through his parents, and Peter and Tracy M. (hereafter "Plaintiffs" or "Parents"), on M.M.'s behalf as well as their own, bring this action against the Rose Tree Media School District ("RTMSD" or "the District") for declaratory relief pursuant to the Individuals with Disabilities Education Act, ("IDEA"), 20 U.S.C. §1401 *et seq*, as well as Rule 57 of the Federal Rules of Civil Procedure and the Declaratory Judgment Act, 42 U.S.C. §2201. They also seek injunctive and monetary relief under the IDEA and Section 504 of the Rehabilitation Act of 1974, 29 U.S.C. §794 *et seq*., and 42 U.S.C. §1983. Furthermore, under Pennsylvania law they seek remedies for breach of contract and equitable estoppel. Plaintiffs also seek reimbursement for their attorneys fees and the costs of this litigation.

This case is unprecedented both factually and legally, and has dramatic implications for the due process system Congress relies upon to implement the IDEA and to assure the provision of FAPE to millions of children with disabilities across the country. Plaintiffs have been forced

-1-

to bring this action to clarify their federally protected rights in relation to the RTMSD as parents

of a child with disabilities. After having initiated due process proceedings on behalf of M.M.;

and after having secured interim relief from a Pennsylvania Special Education Hearing Officer

that required the RTMSD to fund M.M.'s residential educational placement during the pendency

of those due process proceedings; and also having thereafter settled their due process claims with

the District in connection with which they signed a general release and gave up significant rights,

including, among other things, their right to a due process hearing, the RTMSD has now joined

them as third-party defendants in *Melmark, Inc. v. Rose Tree Media School District*, CV-2018-

007188, a case in which the RTMSD is a defendant in the Delaware County Court of Common

Pleas. Melmark has sued the District for unpaid special education services that Melmark

provided to M.M. in its capacity as an approved private school (APS) while due process was

underway between RTMSD and Plaintiffs from approximately July 16, 2016 to January 7, 2018

("the pendency period"). The Pennsylvania Special Education Hearing Officer ruled that during

the pendency period, M.M. was legally entitled to remain at Melmark at the District's expense to

receive his free and appropriate public education (FAPE) under the IDEA. The RTMSD refused

to pay for any of M.M.'s services at Melmark, however, thereby incurring significant

indebtedness which the District now seeks to impose on M.M.'s parents in the event the Court of

Common Pleas orders it to pay Melmark. The RTMSD baselessly asserts that Parents had a

contract with Melmark to pay hundreds of thousands of dollars for their own FAPE for which the

District, not Parents, were legally responsible.

The Pennsylvania Hearing Officer's interim placement orders dispositively concluded

that M.M. was entitled to maintain his residential placement during the pendency period and that

-2-

the District, as the LEA, had the obligation to pay for it. The Court of Common Pleas has no jurisdictional authority to overrule these factual and legal findings. Nonetheless, it has asserted jurisdiction over the RTMSD's third-party complaint, thereby placing Plaintiffs in potential jeopardy of having to pay for their son's FAPE in violation of their rights under federal law.

It is legally impossible for Parents to be liable to the RTMSD for the costs associated with their son's special education services while he remained at Melmark under the Hearing Officer's interim placement orders. Until Parents' due process claims were resolved by way of a settlement with the District in January, 2018, and M.M. thereafter left Melmark for another placement, the duty to fund M.M.'s services at Melmark fell at all times on the RTMSD, not on M.M.'s parents. There was nothing that either the District or Melmark could legally do to transfer the funding obligation for M.M.'s FAPE to his parents. If either party had done so, any such contract would be void as a violation of federal public policy and entirely unenforceable in any court, much less a state court which has no statutory jurisdiction whatsoever over special education matters.

The District's lawsuit against the M.M.'s parents, therefore, is not only legally baseless and retaliatory, but also threatens to do great damage to the entire due process system with implications that extend far beyond this particular case. Declaratory relief is essential to clarify Plaintiffs' federal protections in relation to the RTMSD and articulate the scope of the state court's jurisdiction to interfere with those rights in a third-party proceeding. This will effectively settle the controversy between the parties in accordance with the specific terms of the IDEA and its underlying policies. It was clearly Congress's intention to grant exclusive jurisdiction over the allocation of financial liability for the cost of special education placements, and interim

-3-

placements in particular, to the special education due process system. Allowing a school district to use state courts to retroactively undo the remedies parents secure through the IDEA's due process system would effectively nullify the IDEA's system for dispute resolution and interfere with the provision of FAPE to students with disabilities.

## II.    JURISDICTION

1.    This Court has original jurisdiction pursuant to 28 U.S.C. §20 U.S.C. 1415 (i). Jurisdiction is further predicated upon 28 U.S.C. §1331, this being an action arising under the laws of the United States.  Jurisdiction over the state law claims rests on this Court's pendent jurisdiction pursuant to 28 U.S.C. §1367 (a).

2.    Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiffs and the Defendant reside in Delaware County, Pennsylvania, where the causes of action arose.

## III.    PARTIES

3.    M.M. is a sixteen year-old student with intellectual disability, severe autism and related impairments including speech and language deficits, anxiety, OCD, and ADHD, who is eligible for special education services under the IDEA and enjoys the protections afforded to persons with disabilities under Section 504.

4.    Peter M. and Tracy M. are M.M.'s parents.  At all times relevant to this Complaint, they have resided within the boundaries of the Rose Tree Media School District ("RTMSD" or "the District").

5.    The RTMSD is a public school District whose administrative offices are located at 308 North Olive Street, Media, PA.

## III.   FACTUAL STATEMENT

### A.   Procedural Rights and Remedies

6.      The IDEA requires Local Educational Agencies (LEA's) receiving federal funding to ensure that all children with disabilities between the ages of three and twenty-one receive a free and appropriate public education (FAPE), including specially designed instruction and related services designed to meet all of their unique educational needs and prepare them for further education, employment, and independent living. 20 U.S.C. §1400, *et. seq;* U.S.C. §1400 (d)(1)(A).

7.      FAPE must be provided to each eligible child at no cost to the child's parents.

8.      Since approximately July, 2016, and until January 7, 2018 (the "relevant time period" or "the pendency period"), the RTMSD was the local educational agency with the legal and financial responsibility under the IDEA for providing FAPE to M.M.

9.      The IDEA requires LEA's to maintain a continuum of service placements to meet the individualized needs of students with disabilities. 34 C.F.R. 300.115. Where a child cannot receive FAPE in a traditional day program, and requires residential placement in order to receive FAPE in accordance with his or her educational needs and individual circumstances, the IDEA requires the LEA to provide such services. Section 504 provides similar protections. *See* 34 C.F.R. §104.33 (c)(2).

10.     Both the IDEA and Section 504 of the Rehabilitation Act provide procedural safeguards to enable meaningful parental participation in matters concerning their child's educational program.

11.    Both Section 504 and the IDEA allow parents to obtain administrative and judicial review of school districts' decisions concerning their child's education.  20 U.S.C. § 1415.

12.    When a student and a parent disagree about what constitutes FAPE, parents have the right under Section 1415 of the IDEA to request a special education due process hearing to challenge any aspect of their child's identification, evaluation, or educational placement, of the free and appropriate public education to the child. 20 U.S.C. § 1415 (b).

13.    The IDEA makes it mandatory for parents and/or school districts to exhaust their administrative due process remedies through the special education hearing process whenever they seek any type of educational relief available under the IDEA. This requirement is designed to provide specialized adjudication services by highly trained hearing officers with expertise in special education matters.

14.    When a parent requests a hearing under Section 1415 of the IDEA, the child shall remain in his "then-current" educational placement. 20 U.S.C. §1415 (j).

15.    When a parent moves into a school district from another state, it may not always be possible for the student to stay in his original placement. Accordingly, the IDEA requires the receiving school district to provide comparable services to those which have been provided by the previous LEA until the new LEA develops and implements a new IEP with parental involvement and consent. 20 U.S.C. §1414 (d)(2)(C)(i)(II), 34 C.F.R. §300.323 (f).

16.    Both of these statutory requirements are designed to keep the child's special education services in place during the often ponderous resolution dispute process. Comparable services, like pendency, means, "in effect," "the last *implemented* IEP." *A.M. by Marshall v. Monrovia Unified Sch. Dist.*, 627 F.3d 773  (9th Cir. 2010).

-6-

17. In Pennsylvania, due process is invoked by filing a complaint with the Office of Dispute Resolution (ODR), which assigns a Pennsylvania Special Education Hearing Officer to fulfill the requirements set forth in the IDEA.

18. A hearing officer's orders are appealable under the IDEA to either federal court or to the applicable state court (which in Pennsylvania is the Commonwealth Court). Once the appeal period has passed, the Hearing Officer's orders, including any interim orders, are final.

19. The IDEA provides that a parent who prevails at the administrative level but is later faced with a non-compliant LEA is aggrieved for purposes of Section 1415 (i)(2) and has the right to bring a civil action in federal court to redress that grievance.

**B. Chronology of the Present Dispute**

20. Because of the severity of his disabilities, M.M. has been a residential special education student since December, 2013, when he was ten years old. At that time he lived with his family in the Cheshire School District in Cheshire, Connecticut.

21. Cheshire place M.M. at Melmark in a residential program because he required intensive services around the clock to receive FAPE due to the global impact of his intellectual disability and autistic spectrum disorder, including, *inter alia,* severe deficits in his educational, social, communication, behavioral and emotional self-regulation, sensory functioning, and daily living skills.

22. M.M.'s behavioral health needs, like his many other needs spanning a range of domains, are educational needs which must be addressed in order for him to receive FAPE, and they were so treated by Cheshire for purposes of M.M.'s educational programming.

23. Because of the intensity of M.M.'s educational and behavioral needs, which included, among other things, a severe eating disorder and a serious risk of elopement, Cheshire and Melmark agreed that M.M. would receive his FAPE in Melmark's RTF building.

24. Beginning in 2013, and pursuant to 20 U.S.C. §1415 (b)(3), Cheshire issued three successive Prior Written Notices placing M.M. at Melmark as an Approved Private School (APS)" to provide "EXTENDED SCHOOL YEAR and SCHOOL YEAR services described in the Individual Educational Placement for [M.M.], 365 days per year, twenty-four hours per day.

25. Because M.M.'s educational services were being delivered in an RTF setting, Melmark created an Individual Service Plan (ISP) for M.M. that was coordinated and cross-referenced with his IEP and vice versa. Cheshire contracted with Melmark to provide all the coordinated services on both the IEP and ISP as part of M.M.'s FAPE entitlement.

26. M.M.'s parents moved their family from Connecticut into the RTMSD in July, 2016, and RTMSD became the LEA responsible for providing FAPE to M.M. free of charge to his parents.

27. When M.M. enrolled in the RTMSD on or about July 21, 2016, his last agreed upon educational placement was a 24/7 365 days per year residential placement at Melmark.

28. Shortly after M.M.'s parents enrolled their son in the District, and without convening an IEP meeting, the RTMSD issued a Prior Written Notice (NOREP) advising parents that it would only provide funding for M.M.'s day programming at Melmark, and that it would provide no funding whatsoever for his residential placement.

29. Although M.M.'s then-current educational placement was residential, the District deemed M.M.'s residential services to be "medical" for which it claimed to have no

responsibility.

30.    The RTMSD further claimed that if M.M. needed residential services, the sole obligation for funding them was on the state's mental health system. This was so even though M.M.'s last agreed upon placement was residential, and all aspects of M.M.'s residential program had been fully funded by the Cheshire School District explicitly for the purpose of providing FAPE to M.M.

31.    The RTMSD told Plaintiffs, falsely, that the only way they could secure residential services for M.M. was through the state's mental health system and its residential treatment process.

32.    Plaintiff's were seeking a special education placement for M.M., not mental health treatment, and all of the needs identified in the coordinated IEP and ISP had to be appropriately addressed in order to provide him with FAPE.

33.    Because of the District's refusal to fund M.M.'s residential placement, Plaintiffs filed a due process request on September 9, 2016 pursuant to Section 1415 of the IDEA, thereby automatically invoking pendency or stay-put under Section 14415 (j) and M.M.'s right to receive comparable services under Section 1414 (d).

34.    On January 26, 2017, without waiving their claim for residential placement or their right to maintain M.M.'s pendent residential services at Melmark during due process, Plaintiffs agreed to allow the RTMSD to move M.M.'s day programming to the Delaware County Intermediate Unit (DCIU).

35.    The RTMSD funded the DCIU school day placement, but it continued to refuse funding for M.M.'s residential services at Melmark.

-9-

36.     M.M. had a legal right to stay at Melmark unless or until his parents and the RTMSD agreed otherwise or a Hearing Officer issued an order to the contrary. Thus, although Melmark continued to threaten to discharge M.M., it was serving as an APS in relation to M.M. and therefore had the duty to provide his then-current residential services at no charge to M.M.'s parents, even though the RTMSD was refusing to pay for those services.

37.     As the operative APS for M.M. while pendency was underway, Melmark was legally precluded from attempting to solicit payment from M.M.'s parents for any portion of their son's FAPE, by contract or otherwise. The obligation to pay for M.M.'s educational services fell at all times on the District.

38.     Although Melmark made multiple demands for payment to the RTMSD during the relevant time period, it never solicited any such payments from M.M.'s parents, nor did it attempt to transfer any of the costs of M.M.'s residential placement to them by way of contract or any other means.

39.     The District's ongoing refusal to pay Melmark escalated the pressure Melmark placed, in turn, on M.M.'s parents to move him to a different placement, Plaintiffs filed a motion with the Pennsylvania Special Education Hearing Officer on April 11, 2017 to obtain an interim order against the RTMSD requiring it to maintain M.M.'s residential placement and the funding therefor pending the outcome of due process.

40.     On May 1, 2017, the Hearing Officer issued an order in which she concluded that M.M.'s last agreed upon educational placement "unquestionably contained a residential component" and that he was entitled to receive residential educational services for purposes of FAPE pending the conclusion of due process.

-10-

41.    The Hearing Officer rejected the District's argument that M.M.'s residential services were not part of his FAPE. She also rejected its claim that the responsibility for funding those services fell to the mental health system, rather than the District, as they were incorporated into M.M.'s IEP and were part and parcel of his then-current placement.

42.    The Hearing Officer also rejected the RTMSD's claim that because the physical facility in which M.M. was receiving his residential services at Melmark was labeled an "RTF," the funding for them should have come from the mental health system rather than the District.

43.    Pursuant to the Hearing Officer's order and by operation of federal law, M.M. was entitled to continue receiving his residential services at Melmark during the due process proceedings, and the duty to fund those services fell solely upon the RTMSD.

44.    Although it did not appeal the Hearing Officer's interim order, the RTMSD did not comply with it either, and it refused to provide any funding for M.M.'s services at Melmark. However, at no time during the pendency period did the RTMSD ever demand payment from M.M.'s parents for the costs of any aspect of M.M.'s FAPE, nor did it ever claim that it had any right to contribution from them. Furthermore, it made no such argument to the Hearing Officer, who had the exclusive authority to assign financial responsibility for M.M.'s educational placement during the pendency period.

45.    Parents' counsel worked diligently with the RTMSD and with Melmark to secure a new residential placement for M.M.

46.    Plaintiffs counsel worked cooperatively with Melmark to ensure that M.M. would continue to receive his services there in spite of the increasingly hostile relationship between the RTMSD and Melmark, and in spite of the RTMSD's ongoing failure to pay for those services.

47.     During the fall of 2017, while due process was still pending, M.M. was accepted at Camphill Special School, but for programmatic and practical reasons it was not feasible or appropriate for him to start until January 7, 2018.

48.     Due to the District's ongoing failure to provide funding, Melmark threatened to discharge M.M. in October, well before his new placement was available to take him.

49.     The RTMSD demanded that Parents pay for M.M. to remain at Melmark after the Thanksgiving break and until M.M.'s start date on January 7, 2018.

50.     On November 15, 2017, Plaintiff's sought emergency relief from the Hearing Officer against both RTMSD and Melmark to keep M.M. in his placement until he could be moved to Camphill on January 7th. They filed for an emergency stay-put order against the District and also filed a due process complaint against Melmark to prevent it from discharging M.M.

52.     On December 12, 2017 the Hearing Officer issued a second interim order, in which she once again rejected the RTMSD's claim that M.M.'s "then-current" educational program did not include a residential component.

53.     Pursuant to the Hearing Officer's second interim order, RTMSD as the LEA, continued to bear the sole responsibility for funding M.M.'s then-current educational services, including his residential services.

54.     The RTMSD never appealed either of the Hearing Officer's interim orders, they are final and conclusive of all the issues they addressed.

55.     Shortly after the second interim order, the Plaintiffs and the RTMSD executed a settlement agreement "in order to avoid continued disputes and litigation which have arisen or may arise between [them], and which they intended to be legally binding, in settlement of any

and all outstanding or potential education and discrimination claims of any kind arising from the beginning of time through August 31, 2020, whether known or not known (including but not limited to claims for compensatory education, tuition reimbursement; extended school year services; transportation; compensatory damages; payment or reimbursement for any educational or residential services for Student; attorney fees and costs; and any and all expert witness fees and costs, evaluation charges, obligations or liabilities)...".

56. As part of the settlement, Plaintiffs signed a general release for any claims that "they and/or the Student may otherwise have..." and they agreed not to bring "any such claims on their own behalf or on Student's behalf...".

57. At no time before the settlement agreement was executed did the RTMSD ever suggest or assert that it had any potential claim against Plaintiffs to defray in whole or in part the cost of M.M.'s services at Melmark.

58. The School Board approved the settlement agreement on January 25, 2018. On that basis, Parents' attorney informed the Hearing Officer that the case had been resolved, and she therefore entered an order dismissing their claims against the District.

59. Several months later, in August, 2018, Melmark filed a lawsuit against the RTMSD in the Delaware County Court of Common Pleas seeking financial recompense for the services it provided to M.M. during the pendency of the due process proceedings but which the District never paid.

60. RTMSD thereafter filed a third party complaint against Plaintiffs claiming that if it was liable to Melmark for M.M.'s FAPE services during the pendency period, Plaintiffs should be required to reimburse the District for the cost of those services pursuant to an alleged

-13-

contract with Melmark.

61. There is not now and never was a contract or any other financial arrangement between Parents and Melmark pursuant to which they undertook any of the RTMSD's funding responsibilities for providing FAPE to M.M. during the pendency period.

62. RTMSD does not claim to have ever seen such a contract, nor has it ever claimed that it was a third party beneficiary to such contract.

63. The RTMSD is aware that while Melmark was serving as an APS during the relevant time period, it was legally precluded from charging Plaintiffs for any of the services it was providing to M.M., or from soliciting any form of contractual arrangement for that purpose from Plaintiffs.

64. Even if Melmark had secured a contractual promise from Parents requiring them to pay for any aspect of M.M.'s FAPE while it was serving as an APS in relation to M.M., any such contract would be illegal and unenforceable. M.M. was entitled to fully funded FAPE services under the IDEA's pendency and comparable services provisions at no cost to his parents. Melmark's only avenue for securing payment was through the District.

65. As the supervising LEA, if the RTMSD had any knowledge that Melmark was soliciting contractual promises from Parents to pay for services Melmark was required to provide free of charge as the APS for M.M., the District would have had a duty to take corrective action to ensure that M.M. received the FAPE to which he was entitled, and for which it was at all times responsible.

66. Plaintiffs filed preliminary objections to the District's joinder complaint in state court seeking dismissal of the RTMSD's purported contract claim against them because there is

no contract, and, as a matter of federal law and public policy there could not be any such contract. Even if there were such a contract, it would be void as a violation of public policy and unenforceable under federal law by either Melmark or the District.

67.     On April 2, 2019, the Delaware County Court of Common Pleas denied Plaintiffs' preliminary objections, thus requiring Plaintiffs to defend RTMSD's claims in state court.

68.     Plaintiffs are aggrieved pursuant to Section 1415 (h)(2) of the IDEA because the RTMSD has not only failed to comply with the Hearing Officer's orders, but it is now attempting to foist the potential financial liability for its failure to do so on Plaintiffs in violation of the IDEA itself and the Hearing Officer's interim placement orders which are final, binding, and unappealable to any court.

69.     Declaratory relief will define the federal rights of the parties in the state court proceedings and will effectively settle the controversy between the parties in accordance with the specific terms of the IDEA and its underlying policies, as well as the other federal and state legal protections to which Parents are entitled, as explained below.

**STATEMENT OF CLAIMS**

### COUNT I: DECLARATORY JUDGMENT AS TO FINAL, BINDING, AND ENFORCEABLE NATURE OF HEARING OFFICER'S INTERIM PLACEMENT ORDERS AND THE IDEA'S ALLOCATION OF FUNDING FOR FAPE

70.     The allegations set forth in Paragraphs 1-69 are re-alleged and incorporated by reference herein.

71.     Plaintiffs seek declaratory relief pursuant to the IDEA, the Declaratory Judgment Act, and Fed. R.C.P. 57 confirming that under the IDEA and the final and binding interim placement decisions by the Pennsylvania Special Education Hearing Officer, the RTMSD is

-15-

solely responsible for funding M.M.'s FAPE during the pendency period, and that under no circumstances can the RTMSD retroactively claim, nor can the Court of Common Pleas award, any reimbursement from Plaintiffs to the RTMSD for the cost of those services.

72.     The Court of Common Pleas has no jurisdiction or statutory authority to re-allocate the IDEA's payment structure, which requires LEA's, not parents, to fund FAPE whenever a child is placed in an APS pursuant to the IDEA's placement procedures. This obligation continues when due process is underway pursuant to the IDEA's pendency and comparable services provisions without cost to parents, whether or not parents are ultimately successful in the due process proceedings. 20 U.S.C. §1415 (b); 20 U.S.C. §1415 (j); 20 U.S.C. 1414 (d)(2)(C)(i)(II).

73.     The Hearing Officer's unappealed interim placement orders are final and binding and fully and they finally resolved the payment obligations for M.M.'s educational services during the pendency period.

74.     Pursuant to the Hearing Officer's unappealed interim placement orders, M.M. was entitled to residential services for purposes of FAPE during the pendency period.

75.     By operation of law, the Special Education Hearing Officer's interim placement orders required RTMSD to fund M.M.'s FAPE. including his residential placement during the pendency period, until that dispute was resolved, at no cost to M.M.'s parents.

76.     The Delaware County Court of Common Pleas has no jurisdiction or statutory authority to enter an order against Parents that requires them to pay for M.M.'s services in violation of the IDEA's placement process or its placement maintenance procedures, nor does it have authority to order payments by parents in contradiction or violation of a Special Education

-16-

Hearing Officer's final and binding interim placement orders.

77.    To the extent that the Court of Common Pleas concludes that the RTMSD must pay Melmark for all or part of the services Melmark provided to M.M. during the pendency period, it may not order Parents to defray any part of the RTMSD's liability.

**COUNT II: DECLARATORY JUDGMENT CONFIRMING THAT NEITHER A SCHOOL DISTRICT NOR AN APS MAY MAKE OR ENFORCE ANY CONTRACTUAL ARRANGEMENTS BETWEEN PARENT AND AN APS THAT REQUIRES PARENTS TO PAY FOR FAPE WHEN THE CHILD IS PLACED PURSUANT TO SECTION 1415 (b)(3 0F THE IDEA AND/OR ENTITLED TO FAPE UNDER SECTION 504**

78.    The allegations set forth in Paragraphs 1-77 are re-alleged and incorporated by reference herein.

79.    Plaintiffs seek declaratory relief pursuant to the IDEA, the Declaratory Judgment Act, and Fed. R.C.P. 57 confirming that any contract secured by an APS pursuant to which it solicits or obtains a parent's consent to defray the cost of his/her child's FAPE when the child is placed at the APS pursuant to the placement procedures set forth in  Section 1415 (b)(3) of the IDEA, constitutes a violation of the IDEA and the public policies upon which it is based, and is therefore void *ab initio* and unenforceable against parents either directly by the APS or by a school district as a third party and/or as a third party beneficiary.

80.    Under no circumstances can an LEA and/or an APS attempt to transfer the funding obligation for maintaining the child's FAPE placement after stay-put and/or the right to comparable services has been invoked or decided by a hearing officer, either by way of a direct contract with Parents, or through third party contractual arrangements between an APS and parents, and any such contract would directly violate the statutory requirements in the IDEA and

-17-

Section 504 that FAPE be provided free of charge.

81.    If there is or had been such a contract between Melmark and M.M.'s parents, the RTMSD is legally precluded from attempting to enforce any such contractual obligation against parents on behalf of the APS, and/or from benefitting from any such contract as third party, thereby requiring parents to pay for the FAPE to which their child is or was entitled under the IDEA and Section 504.

## COUNT III: DECLARATORY JUDGMENT AND IMPERMISSIBLE *NUNC PRO TUNC* APPEAL IN VIOLATION OF THE IDEA

82.    The allegations set forth in Paragraphs 1-81 are re-alleged and incorporated by reference herein.

83.    Plaintiffs seek declaratory relief pursuant to the IDEA, the Declaratory Judgment Act, and Fed. R.C.P. 57 confirming that the Court of Common Pleas has no jurisdiction to adjudicate any legal or factual issue that has been finally decided by a Pennsylvania Special Education Hearing Officer in a due process proceeding.

84.    The RTMSD's Amended Joinder Complaint is an impermissible collateral attack and, in effect, a *nunc pro tunc* appeal from the Hearing Officer's interim orders which were binding on all the parties, and placed the responsibility for funding M.M.'s residential services at Melmark during the pendency period solely on the RTMSD.

85.    There is no mechanism pursuant to which a hearing officer's factual or legal determinations can be appealed or in any way adjudicated in the Court of Common Pleas, where there is no statutory jurisdiction to entertain such a claim. *C.f.*, §1415 (i)(2)(a).

-18-

86.    The District never appealed either of the Hearing Officer's interim orders, and those orders are final and *res judicata* as to all the issues they addressed and resolved, including, *inter alia*, that M.M.'s then-current placement when his parents moved to Pennsylvania was residential, and that his residential services are educational services and required for FAPE, whether or not they may also qualify for funding through the state's mental health system or any other funding source.

87.    Pursuant to the Hearing Officer's interim placement orders, the RTMSD was soley responsible for funding M.M.'s FAPE, including his residential services, during the pendency period.

88.    To the extent that the RTMSD's failure to comply with the Hearing Officer's orders caused it to incur contractual indebtedness to Melmark during the pendency period, and the Court of Common Pleas enters an order against the District and in Melmark's favor, the RTMSD it is solely responsible for satisfying the financial obligations thereby imposed without any contribution whatsoever from M.M.'s parents.

## COUNT IV: CLAIM FOR ENFORCEMENT OF SETTLEMENT AGREEMENTAND RETROACTIVE FAPE VIOLATION PURSUANT TO THE IDEA AND SECTION 1983

89.    The allegations set forth in Paragraphs 1-88 are re-alleged and incorporated by reference herein.

90.    After the decision on the second interim order, the District executed the settlement agreement intending to be legally bound and in order to "avoid continued disputes and litigation which have arisen or may arise between the parties."

-19-

91. The District's claim for reimbursement against Parents for M.M.'s FAPE arose before it entered into and executed the settlement agreement with M.M.'s parents.

92. By entering into the settlement agreement with Plaintiffs in January, 2018, the District waived this and every other claim it had or could have had against Parents.

93. Plaintiffs entered into the settlement agreement in good faith and in M.M.'s best interests with the reasonable expectation that all claims between them, including any claims they had against the RTMSD and any claims the RTMSD had or might have had against them, would be forever resolved, thereby allowing them to protect and preserve FAPE for M.M.

94. In exchange for the District's promises, Plaintiffs' consented to waive their right to a due process hearing and they also executed a general release in the RTMSD's favor.

95. As a result of the settlement agreement, the District did not have to defend itself any further in the due process proceedings, and it was able to mitigate the potential risk of an adverse Hearing Officer decision at the conclusion of due process, which could have imposed enormous prospective financial burdens on the District.

96. This Court has jurisdiction to enforce the settlement agreement as this comports with settled practice in this Circuit to create a comprehensive scheme for the delivery of special education services to eligible students.

97. Non-compliance with a governing settlement agreement constitutes a denial of FAPE for which federal courts may fashion a remedy, including monetary damages.

98. The District's failure to abide by its promise not to assert any claim it had or might have had against Parents at the time of the settlement is a fundamental breach of the settlement agreement.

-20-

99.    By way of its breach of its promises in the settlement agreement, the District is attempting to retroactively reverse the Hearing Officer's orders which required the District to provide FAPE to M.M. during the pendency of due process, up to and through the date the settlement was executed.

100.    Having secured the benefit of Plaintiffs' release of claims and their abandonment of their due process claims, the RTMSD is now attempting to force Plaintiffs to shoulder the financial obligations the Hearing Officer squarely placed on the District itself by way of her interim placement orders during the pendency period.

101.    Even if the District had ultimately prevailed in due process, the Hearing Officer had no authority to award the District any compensation whatsoever from M.M.'s parents for the cost of their son's placement at Melmark during the pendency period.

102.    Additionally,  even if it were feasible for a school district to demand such relief from a parent under these circumstances, the District presented no such claim to the Hearing Officer and it entirely failed to exhaust that issue.

103.    The District's knowingly and intentionally improper use and abuse of the state court proceedings against Parents, under color of law, to deny them the benefits of the settlement and to cause them to forfeit retroactively the interim remedies they secured from the Hearing Officer, is in clear violation of the requirements of the IDEA and in direct violation of Plaintiff's clearly established federal statutory rights.

104.    Plaintiffs seek declaratory, injunctive, and equitable relief against the District, confirming that the District's third-party claim against them constitutes a material breach of the settlement agreement itself and also seriously compromises the statutory requirements of the

IDEA and the Congressional policies upon which it is based.

105.    Plaintiffs seek an order enforcing the settlement agreement and requiring the District to comply with its agreement not to assert any claims against Parents which arose before the settlement agreement was executed.

### COUNT V: RETALIATION IN VIOLATION OF THE IDEA AND SECTION 504

106.    The allegations set forth in Paragraphs 1-105 are re-alleged and incorporated by reference herein.

107.    Plaintiffs' advocacy on M.M.'s behalf pursuant to the IDEA's due process system constituted protected activity under both the IDEA and Section 504 of the Rehabilitation Act.

108.    The District intentionally and deliberately failed to comply with the Hearing Officer's interim placement orders and never appealed them, thereby incurring extensive indebtedness to Melmark which it is now intentionally and deliberately attempting to foist onto parents in direct violation of the Hearing Officer's orders, the statutory protections to which Parents are entitled under the IDEA, and the public policies upon which the IDEA is based.

109.    RTMSD's third party claims constitute a materially adverse action that is causally related to Plaintiffs' use of due process to secure their son's rights in violation of the IDEA and Section 504. In fact, the District is directly attempting to deny Parents the relief they obtained from the Pennsylvania Special Education Hearing officer in her two interim placement orders, a remedy to which the District knows is not legally available, and also knows to be a violation of Plaintiff's well-established legal rights and the public policies that underlay the IDEA.

110.    The District is using an improper state court forum in an intentional and retaliatory effort to victimize Parents for their use of due process and the interim remedies it

-22-

provides, and which they secured during the pendency period.

111.    The District is using its third party action against Parents in a severely adverse and coercive manner to place Parents in a worse position than they ever could have been in even if they had they litigated their due process case to a conclusion and lost the case, as the Hearing Officer could not have imposed any of the costs of M.M.'s placement during the pendency period on Parents, regardless of the outcome of due process.

112.    This type of adverse and retaliatory action against parents who have used the due process system to secure FAPE for their children could well dissuade reasonable parents from using the due process system at all, something that would significantly undermine the Congressional disability policies, and pursuant to which the IDEA, in particular, is implemented and its promises guaranteed to children with disabilities.

**COUNT IV: BREACH OF CONTRACT**

113.    The allegations set forth in Paragraphs 1-112 are re-alleged and incorporated by reference herein.

114.    The District executed a binding settlement agreement pursuant to which it waived any and all claims it had against parents in exchange for their general release of their due process claims and any other claims they had or might have had against the District through the date of execution, which was January 4, 2018.

115.    Pursuant to the settlement agreement, the District waived any claims it had against Plaintiffs, both specifically and constructively, including the contract claim it has specifically asserted against them in the third-party action.

116.    The District's waiver was a fundamental element of the consideration for Plaintiffs' agreement to enter into the settlement agreement, upon which they reasonably relied, and without which they never would have agreed to execute a general release in the District's favor.

117.    The District's assertion of third-party contract claims against Plaintiffs in state court that arose before it executed the settlement agreement constitutes a breach of the settlement agreement which has caused Plaintiffs to suffer damages for which they are entitled to a remedy.

### COUNT V: EQUITABLE ESTOPPEL

118.    The allegations set forth in Paragraphs 1-117 are re-alleged and incorporated by reference herein.

119.    The District induced Plaintiffs to enter into a settlement agreement in mutual settlement of all claims the parties had between them at that time.

120.    The District at no time before it entered the settlement agreement with Plaintiffs asserted or in any way suggested that it had any claim against them for payment, in full or in part, contractual or otherwise, for the cost of M.M.'s FAPE.

121.    On or about January 25, 2018, after the Board of School Directors approved the settlement agreement and only on that basis, Plaintiffs notified the Hearing Officer that the case was resolved, and she therefore entered an order dismissing their claims against the RTMSD.

122.    Having received the benefit of the Plaintiffs' waiver, the District is equitably estopped from asserting financial reimbursement claims which, by definition, had to have arisen before the settlement was executed and then approved.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that the Court grant the following relief:

1.      Pursuant to the IDEA, Rule 57 of the Federal Rules of Civil Procedure, and the Declaratory Judgment Act, a declaratory judgment that: a) Plaintiffs are aggrieved within the meaning of Section 1415 (i)(2) of the IDEA; b) the Hearing Officer's interim orders are final and binding on the RTMSD; c) M.M. was entitled to funding for his educational placement during the pendency period, including is residential services for purposes of FAPE; d) responsibility for funding M.M.'s FAPE during the pendency period rests with the RTMSD, not M.M.'s parents; e) if Melmark had solicited a contract from M.M.'s parents requiring them to pay for M.M.'s FAPE during the pendency period, any such contract would be void and unenforceable as a matter of law and public policy; f) if such contract did exist, the RTMSD is legally precluded from attempting to enforce it on Melmark's or its own behalf; g) the factual and legal conclusions rendered by the Hearing Officer in her two interim orders are *res judicata* and cannot be relitigated against Plaintiffs in the Court of Common Pleas, including the third-party action the RTMSD has brought against Plaintiffs in state court; h) the state court has no jurisdiction to adjudicate factual or legal findings made by the Hearing Officer in either of her interim orders; i) the RTMSD's actions against Plaintiffs constitutes illegal retaliation in violation of the IDEA and Section 504; j) the District failed to exhaust its educational claim that Parents should be responsible for funding all or part of M.M.'s FAPE during the pendency period; k) the District's assertion of a claim that arose before its execution of the settlement agreement violates that agreement and denies FAPE; l) the District's third-party action in state court against Plaintiffs constitutes a breach of contract, and m) the RTMSD is equitably estopped from bringing any

-25-

contract claims against Plaintiffs by virtue of the January, 2018 settlement agreement.

2.    An injunction requiring the RTMSD to pay damages to Plaintiffs and reimburse them for all the costs, attorneys fees, and expenses they have incurred or will incur in the defense of its third-party action against them, and for all the other damages they have suffered as a result of its retaliatory actions against them;

3.    Award Plaintiffs all the reasonable attorney fees and costs which they have incurred or will incur in prosecuting this action.

4.    Grant such other declaratory, injunctive, and other relief as this Court deems just and appropriate.

Respectfully submitted,

By: _____
LORRIE McKINLEY, Esquire
ID# 41211
Counsel for the Plaintiffs

McKINLEY & RYAN, LLC
238 West Miner Street
West Chester, PA 19382
Telephone (610) 436-6060
Facsimile (610) 436-6804

DATE        May 2, 2019

-26-